## EMRICK v
## TRUSTEES OF GRATIS TOWNSHIP et

Ohio Probate Court, Montgomery Co

Decided Oct 18, 1937

E. T. Snediker, Dayton, Mahlon Gebhart, Miamisburg, and William Buck, Germantown, for plaintiff.

Wm. R. Rhotehamel, Dayton, and Harold Smock, Dayton, for heirs-at-law.

### OPINION

By WISEMAN, J.

This matter comes on to be heard on the petition of Charles A. Emrick, executor of the estate of William K. Fouts, deceased, praying the construction of the will and codicil in certain particulars. The decedent, William K. Fouts, executed his will on August 17, 1929 and a codicil to said will on February 23, 1932. The said testator died July 30, 1935 and on September 23, 1935 said last will and testament and codicil were probated in the Probate Court of Montgomery County, Ohio.

In Item Two of said will, the testator left One Thousand Dollars to the trustees of Gratis Township, Preble County, Ohio, "to be held by said trustees as a perpetual fund the income of which to be used for the perpetual care of my cemetery lot in Fairview Cemetery, located at Gratis, Preble County, Ohio;" and "such part of said income from said principal fund as shall not be required to keep up my cemetery lot may be used by said trustees for the benefit of said Fairview Cemetery as they may see fit." Item Three of said will was revoked by the provisions in the codicil in which he left the residue of his property, real, personal and mixed to the trustees of German Township, Montgomery County, Ohio, which fund is to be known as the William K. Fouts Memorial Fund, "the increased income off of said fund to be applied and pay for necessities of the poor and needy children of said German Township, Montgomery County, Ohio, annually."

The principal issue before the court is to determine whether or not these two bequests, being in the nature of charitable trusts, are valid.

It is contended that these bequests are invalid as being in violation of the provisions of §10512-8, GC, which is the statute against perpetuities. It is further contended that the provisions of the will and codicil respecting the manner in which the income from the fund shall be used by the trustees of Gratis Township and the trustees of German Township, respectively, are so indefinite and vague in their true intent and purpose and for that reason should be found by the court to be void.

In the examination of the law respecting the validity of charitable trusts, it is found that a distinction is made between charitable trusts of a public nature and those which may be considered to be of a private character. . By the great weight of authority. the law favors the validity of gifts for public charitable purposes and the courts have been rather liberal in construing wills wherein charitable trusts are created. This is so even though in some respects the trust created is in the nature of a perpetuity.

The trusts created by the testator in his

will and codicil are in the nature of public charitable bequests. Such trusts have been upheld by the courts of this state.

As early as 1839 the Supreme Court of Ohio, in the case of **Trustees, McIntire Poor School v Zanesville Canal & Manufacturing Co., 9 Oh St 203,** in which the testator left property to the Zanesville Canal & Manufacturing Company for the education of poor children of Zanesville, held that the purpose and intent of the testator was sufficiently definite and that the trust was not invalid for the reason that the particular persons to be benefited were not named, and that discretion would necessarily be exercised by the trustees, and whether the person to be benefited was in being or not, and whether the bequest could be carried into exact execution or not, nevertheless the court would sustain the legacy.

In 1851 the will of John McIntire again came before the Supreme Court of Ohio for construction, relative to the question as to who were the proper objects of his bounty, since the city of Zanesville had in the meantime grown and embraced territory which was not part of the city of Zanesville at the time the will was probated. The Supreme Court held that:

"It is also considered as a settled rule, that such a gift to a charitable use is to receive a more liberal construction."

The court held that sufficient discretion could be exercised by the trustees in selecting the objects of the testator's bounty by granting aid to poor children in the city of Zanesville as it may be found whenever the grateful duty was to be performed.

In the case of **Urmey's Executor v Wooden et, 1 Oh St 161,** the syllabus reads as follows:

"A residuary clause in a will in these words:

"The remainder of my estate I do hereby give and devise to the poor and needy, fatherless, etc., of two townships named, 'to such poor as are not able to support themselves, to be divided as my executors may deem proper without any partiality,' is valid and effectual for the purposes therein expressed.

"The courts of chancery in this state, upon general principles independently of the statute of charitable uses, 43 Elizabeth, have jurisdiction to enforce such trusts."

In the Urmey case, the heirs made a contention similar to that which is made in the case at bar, that the bequest was uncertain and indefinite as to the objects of the bequest and therefore void. The court on page 164 say:

"Although the jurisdiction of courts of chancery over charitable bequests of this character has been the subject of much controversy, it seems to have been always agreed, from an early period in the Roman law to the present time, that such gifts are to receive a most liberal construction."

The court on page 164 in commenting on the application of the Statute of Charitable Uses, 43 Elizabeth, stated that the principles of that statute have been incorporated into American jurisprudence and cited the case of Whitman v Lex. 17 Serg. & Rawle, page 88, wherein a bequest of a sum of money was made to two churches to lay out the interest annually in bread for the poor of the congregation, the Supreme Court of Ohio uses this language:

"This bequest was sustained by Chief Justice Gibson in a very masterly opinion covering the whole ground. He arrived at the conclusion that it was immaterial whether the persons to take were in esse or not, or whether the church was then a corporation or not, or how uncertain the objects might be, provided there was a discretionary power vested anywhere over the application of the testator's bounty to the objects intended—that if the intention sufficiently appeared in the bequest, it would be held valid."

The court then cites with approval the case of Inglis v The Sailors' Snug Harbor, 3 Pet. 99, in which a bequest to the chancellor of New York, and others, in trust to erect an asylum for the purpose of supporting aged, decrepid, and worn out sailors, was sustained. It cites also with approval the John McIntire will case, decided by the Supreme Court which has heretofore been mentioned. On page 165 in commenting on the contention that the provision was invalid and indefinite the court say:

"In this case, the property is by the will expressly vested in the executors, and they are made trustees to apply the fund from time to time to relieve the necessities of the poor and needy in the townships

named. The trustees exist to take and hold the property and they are charged to seek out and apply it to the objects of the testator's bounty. These objects are as clearly pointed out as the nature of the case will admit, and as little as possible left to the discretion of his trustees."

In the case of Scott v Trustees, 39 Oh St 153, in which the testator devised property to the trustees of the township and their successors perpetually, for the exclusive benefit of the poor of the township, with authority to the trustees to manage the trust "as they think best for the benefit of said poor," it was held:

"It was a devise to the trustees for the exclusive use of the poor of the township, creating a charitable trust to be administered by said trustees. * * * The testator had the power to devise the property to the poor of the township, in which case the statute provided the trustees, or to make such devise to trustees for the benefit of such poor. In either case granting such discretion and power in the management of the trust, to whoever the trustees might be, as he saw fit."

In the case of Palmer v Oiler, Exrx., 102 Oh St 271, the syllabus reads as follows:
"A last will contained the following residuary clause, to-wit: 'The residue of my estate I give to The Cleveland Trust Company to be devoted to the needy and poor women'." Held: To be a valid testamentary charitable gift.
"It is not necessary that the beneficiaries be limited to any particular locality.
"In the absence of express power of selection being given to the testamentary trustee, such authority will be implied."

On page 277 the court say:
"There are no statutory requirements in Ohio on this subject, and wills containing charitable gifts have always been construed and their provisions executed according to equitable principles found in the common law. If the will in the instant case is to be construed according to common law principles of equity, it matters not whether we follow the English cases, or the rules laid down by the federal courts, or the courts of a great majority of the states of the Union, or whether, on the other hand, we confine our research to the decisions of the Supreme Court of Ohio.
"All such authorities evince a disposition to be liberal in the construction of

such gifts and to hold them valid and enforceable if they are possible of execution, and to declare only those invalid and unenforceable which are impossible of execution."

In the case of Gearhart v Richardson, 109 Oh St 418, in which the testator devised a farm to the trustees of the township and their successors in office to be held for the purpose of providing a home for the aged and destitute people of said township and to be maintained by said trustees permanently as a home under such rules and regulations as may be prescribed by said trustees, a similar contention was made as was made in the case at bar. This court wishes to quote from the opinion on page 427:

"Passing to a consideration of the chief points of attack that are made upon this charitable trust, we may say that charitable trusts fail usually from (1) failure of trustee; (2) uncertainty of purpose; (3) uncertainty as to beneficiaries; (4) uncertainty as to manner of execution."
"As to the question of trustees, the plain language of the will, and the nature of the trust, as well as the trustees appointed, to-wit, the trustees of Tallmadge Township, obviate any difficulty in regard to the trust ever failing for want of trustees. It is a general principle of equitable jurisdiction in dealing with charitable trusts that a court of chancery will never permit a charitable trust to fail for want of trustees."
"As to the power of the township trustees to accept this trust, the General Code of Ohio makes ample provision. By §18 GC is it provided: 'The * * * township * * * may receive by gift, devise or bequest, moneys, lands or other properties, for their benefit or the benefit of any of those under their charge, and hold and apply the same according to the terms and conditions of the gift, devise or bequest'."
"And by §3244, GC, it is provided:
" 'It (civil township) shall be capable of suing and being sued, * * * and of receiving and holding real estate by devise or deed, or personal property for the benefit of the township for any useful purpose. The trustees of the township shall hold such property in trust for the township for the purpose specified in the devise, bequest, or deed of gift'."

On page 430 the court makes this inquiry:

"Does the trust fail for uncertainty of beneficiaries, or for incapability of enforcement or administration? It is the paramount claim of those attacking this trust that it is for these reasons chiefly that this trust should be set aside."

On page 431 the court say:

"It is a significant fact that the Ohio Supreme Court reports show that many charitable trusts have been construed, and that in but a few isolated instances has a trust for charitable purposes been allowed to fail." (Numerous cases cited).

On page 432 the court say:

"The general doctrine is that charitable trusts have been favored, and trusts created for such purposes are carried into effect by courts of equity upon general principles of equity jurisprudence under circumstances where private trusts would fail; and this indefiniteness of beneficiaries is one of the characteristics of charitable trusts, and the uncertainty of the persons to be relieved by a charitable fund should never be called into effect for the purpose of destroying the charitable trust."

Again on page 434 the court say:

"Charitable trusts are entitled to a liberal and favorable consideration and will receive a more liberal construction than is allowable to private individuals."

Again on page 436 the court say:

"A great exactness and strictness of construction is the rule in private trusts; while liberality and broad generous application of the principles of equity are called in vogue in construing a will creating a charitable trust." (Cases cited).

"Trusts for public charitable purposes, being for objects of permanent interests and benefit to the public, and perhaps being perpetual in their duration, are upheld under circumstances under which private trusts would fail." 14 L.R.A. (N.S.) 53.

Counsel for the heirs have cited numerous cases to support their contentions, a few of which will be noted.

The case of Collins v Davis, 17 C.C. (N. S.) 221, was one in which a private charitable trust was involved, wherein the court found the language used in the will to be ambiguous, and the terms of the will could not be carried out.

The case of Jones v Creaner, 13 C.C. (N.

SS.) 585, is authority for the principle of law that the courts will uphold and enforce a provision in a will setting aside a fund for the upkeep of a grave.

In the case of Cope v Cope, 45 Oh St 464, the court held that the terms of the will were so involved, obscure and indefinite that the intention of the testator was not ascertainable.

This court is of the opinion that the cases of Hoopert v Gvgel, 25 N.P. (N.S.) 516; Howe v Hodge, 152 Ill. 252; Post v Rohrbach, 142 Ill. 600; Flowers v Metcalf, 4 O.O. 301; Patton v Patton, 39 Oh St 590; Davis v Davis, 62 Oh St 411; Wagner v Schrembs, 44 Oh Ap 44 (14 Abs 187), have no application to the issues made in the case at bar

Sec 18, GC, which provides that certain political subdivisions, including a township or cemetery association, may receive the gift, devise or bequest, moneys, lands or other properties, for their benefit, for the benefit of any others under their charge, and hold and apply the same according to the terms and conditions of the gift, devise or bequest, was at the time of the death of the testator in this case at bar, and still is in full force and effect in this state. §3244, GC, by its provisions makes every civil township a body politic and corporate and gives it the power of receiving and holding real estate by devise or deed, or personal property, for the benefit of the township for any useful purpose and further provides that the trustees of the township shall hold such property in trust for the township for the purpose specified in the devise, bequest or deed of gift.

The court is of the opinion that under the unbroken line of authorities in the state of Ohio, the trustees of these two townships should have the right to receive and to hold these bequests in trust for the benefit of those who were the objects of the testator's bounty, aside from the provisions of §§18 and 3244, GC. However, the provisions of these two sections of the General Code strengthens the claims of the two townships involved.

According to the overwhelming weight of authority relative to the validity and enforcement of public charitable trusts, the trust which the testator creates in Item Two of his will, bequeathing One Thousand Dollars to the trustees of Gratis Township to be held by said trustees as a perpetual fund, the income of which is to be used for the perpetual care of the cemetery lot in Fairview Cemetery, and that such other part of said income which may not be re-

quired to keep up the cemetery lot, to be used by the trustees for the benefit of said Fairview Cemetery as they may see fit, and, also, the trust created in the codicil in which the testator bequeathed his residuary estate to the trustees of German Township to hold and to apply and pay for the necessaries of the poor and needy children of said German Township, are in the nature of public charitable trusts, and, as such, are sustained by the laws of Ohio and given full force and effect. These bequests are not void for indefiniteness or uncertainty as to beneficiaries or general purpose. The testator has seen fit to clothe the trustees with discretionary powers in the administration of the trust and in the selection of the objects of his bounty and has been definite in naming the class to which they shall belong. In Item Two of the will the testator limits the expenditure of the income to the care of the cemetery lot and for the benefit of said cemetery as the trustees may see fit. This court is of the opinion that the purpose of the trust is sufficiently definite and that this trust is not to be held void simply because discretionary power is placed in the trustees in expending a portion of the income from said fund for the benefit of said Fairview Cemetery. Likewise, in the codicil the testator provided that the "increased income off of said fund shall be applied and pay for the necessaries of the poor and needy children of said German Township, Montgomery County, Ohio, annually." This court is of the opinion that the purpose of this trust is as definite as the testator was able to make it. The trust may have been couched in different language but the language is not ambiguous, the purpose of the trust is not indefinite and uncertain, the fund from which the income is to be derived can easily be established and nothing is to be gained by a play on words such as have been used by the testator in the use of the term "increased income." If the fund is established and invested so that an income is derived therefrom, unquestionably the income will be increased from the very moment an investment is made, so that the term "increased income" can only . mean the income "off of said fund." This charitable trust should not be held to be void simply because discretionary power has been placed in the trustees of German Township in the selection of the "poor and needy children" of said township. In both the will and the codicil, the

testator has seen fit to restrict the expenditure of the income of the fund to a certain locality.

Coming now to answer directly the four questions set forth in the plaintiff's petition, the court holds:

In answer to Question One, in which the executor asks the construction of the will and codicil as to whether or not, after the payment of the debts of said estate, it shall be necessary for the executor to sell and dispose of the real estate and personal property in order to create and establish the perpetual trust fund as set forth in said will and codicil, the court holds that it is the duty of the executor after the payment of all debts and funeral expenses, to sell and dispose of, first, the personal property and then the real property, converting the same into money in order to establish the trust fund set up in Item Two of the will. The court holds that by virtue of the provisions of the codicil it will be necessary to convert said property, personal or real estate, into cash in order to establish what the testator designates as the "William K. Fouts Memorial Fund." Unquestionably, it was the intent of the testator that his properties should be used in the creation of a fund which would be. invested so that an income therefrom would be derived, out of which expenditures could be made as the codicil provides. This fund could not be created unless the property, personal and real, is converted into money.

In answer to Question Two, in which the executor asks for the construction of the will in Item Two thereof, as to whether or not the perpetual trust fund vests immediately in the trustees of Gratis Township or at the time said executor pays said sum of One Thousand Dollars to said trustees, the court holds that the trust fund, established in Item Two of the will, vests in the trustees of Gratis Township at the time of the death of the testator.

In answer to Question Three, in which the executor asks that the item in the codicil, granting to the trustees of German Township, Montgomery County, Ohio, a trust fund to be known as "The William K. Fouts Memorial Fund," created to be applied and pay for the necessities of the poor and needy children of said township, be construed as to whether or not said fund vests at the time of the probate of the will or at the time said money is paid to said trustees to create said fund, and, also, whether or not it shall be the full discretion of the trustees of said town-

ship to determine the necessities of the poor and needy children after said fund has been created and has vested in said trustees, the court holds that the trust fund vests in the trustees of German Township as of the date of the death of the testator, and full discretion is placed in the trustees of said township to determine the necessities of the poor and needy children of said township, on and after said fund has been created and placed in the possession of the trustees for the enjoyment by the objects of the testator's bounty. The court holds that whereas the fund vests in the trustees as of the date of the death of the testator, the enjoyment of the fund is postponed until the time it is established.

In answer to Question Four, in which the executor asks the construction of the will and codicil, generally, in order to carry out the intents and purposes of said testator, the court holds that this question is answered by the opinion of the court herein rendered, relative to the validity and enforcement of public charitable trusts.

An entry may be drawn by counsel in conformity herewith.